**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| ERIN K. KELLEY, | Case No. 3:23-CV-00410-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| v. | |
| EAGLE VALLEY CHILDREN'S HOME, *et. al.*, | |
| Defendants. | |

Before the Court is Plaintiff Erin Kelley's ("Kelley") application to proceed *in forma pauperis* (ECF No. 1), and her *pro se* civil rights complaint (ECF No. 1-2). The Court will first address the *in forma pauperis* application and then screen Kelley's civil rights complaint pursuant to 28 U.S.C. § 1915A.

I.    ***IN FORMA PAUPERIS* APPLICATION**

A person may be granted permission to proceed *in forma pauperis* ("IFP") if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefore. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

Pursuant to the LSR 1-1: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

applicant's income, assets, expenses, and liabilities."

"[T]he supporting affidavit [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of the application to proceed IFP reveals Kelley cannot pay the filing fee. (*See* ECF No. 1.) Accordingly, the Court recommends that the IFP application be granted.

## II.    SCREENING STANDARD

Prior to ordering service on any Defendant, the Court is required to screen an *in forma pauperis* complaint to determine whether dismissal is appropriate under certain circumstances. *See Lopez*, 203 F.3d at 1126 (noting the *in forma pauperis* statute at 28 U.S.C. § 1915(e)(2) requires a district court to dismiss an *in forma pauperis* complaint for the enumerated reasons). Such screening is required before a litigation proceeding *in forma pauperis* may proceed to serve a pleading. *Glick v. Edwards*, 803 F.3d 505, 507 (9th Cir. 2015).

"[T]he court shall dismiss the case at any time if the court determines that – (A) the allegations of poverty is untrue; or (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. When reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See, e.g., Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6)

1  standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling

2  on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir.

3  2000) (citation omitted).

4       The Court must accept as true the allegations, construe the pleadings in the light

5  most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v.*

6  *McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in *pro se* complaints

7  are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes*

8  *v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotations marks and citation omitted).

9       A complaint must contain more than a "formulaic recitation of the elements of a

10  cause of actions," it must contain factual allegations sufficient to "raise a right to relief

11  above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

12  "The pleading must contain something more. . . than. . . a statement of facts that merely

13  creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation

14  marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to

15  relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662,

16  678 (2009).

17       A dismissal should not be without leave to amend unless it is clear from the face

18  of the complaint the action is frivolous and could not be amended to state a federal claim,

19  or the district court lacks subject matter jurisdiction over the action. *See Cato v. United*

20  *States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th

21  Cir. 1990).

22  **III.    SCREENING OF COMPLAINT**

23       In her complaint, Kelley sues Defendants Eagle Valley Children's Home, Donna

24  Clarke, Amie Hughes, and Dawn Morgan for retaliation and religious discrimination under

25  Title VII of the Civil Rights Act. (ECF No. 1-2.) Kelley seeks monetary relief. (*Id.* at 12.)

26       Kelley alleges the following: Kelley is a Jewish woman who practices her faith and

27  maintains a kosher diet. (*Id.* at 3.) Kelley was hired as a Certified Nursing Assistant with

28  the Eagle Valley Children's Home in June 2021. (*Id.* at 4.) While employed at the Eagle

Valley Children's Home, Kelley alleges she was subjected to discrimination based on her religious beliefs and retaliation for reporting the discrimination. (*Id.* at 3.)

Kelley alleges that beginning in March 2022, another employee, Amie Hughes ("Hughes"), began harassing Kelley by giving her the silent treatment, ignoring her, and making snide remarks under her breath. (*Id.* at 4.) Kelley alleges that the "bullying behavior" created a hostile work environment. (*Id.*) Kelley's complaint points to a specific event on May 8, 2023, a pizza party, where Kelley alleges that Hughes's friend purposely added pepperoni, which is not kosher, to Kelley's vegetarian pizza. (*Id.* at 5-6.) Kelley states that she was "humiliated and embarrassed that her religious beliefs were being mocked…." (*Id.* at 6.) Kelley then complained to Human Resources Manager Dawn Morgan ("Morgan"), who held a mediation meeting with Kelley and Hughes on May 12, 2022. (*Id.*) Kelley alleges that the meeting "accomplished nothing", Hughes called Kelley "crazy", "nuts" and a "crybaby", and Morgan failed to "curtail" Hughes's "condemnation of Kelley. (*Id.*)

The day after the meeting, Kelley was off work for one week for a planned medical procedure. (*Id.* at 7.) When Kelley returned to work on May 23, 2022, she was directed to go to Morgan's office. (*Id.*) Kelley was informed that prior to taking her medical leave, she had clocked into work 10 minutes early and that she would receive a disciplinary write-up for the violation and her scheduled pay raise would be delayed. (*Id.*) Morgan then informed Kelley that she had thoroughly investigated the "pizza incident" and concluded there was no "concrete proof" that the pizza had been "purposely tampered with." (*Id.*) Kelley was also told that she needed to stop her harassment of Hughes, or she would be terminated. (*Id.*) Kelley alleges that during this meeting she set her keys down on the table and said: "How can I work here if the environment will not change?" and Morgan grabbed the work keys and said "you're done" "there is the door, you need to leave now. You are also no longer allowed on the property" "You put your keys down on the table, you quit." (*Id.*) Kelley then asserts she was escorted out the door and told to pick up her final paycheck at 4:00 p.m. that day. (*Id.*) When Kelley returned for her paycheck, Morgan

directed Kelley to sign a voluntary separation document, which she refused to do. (*Id.* at 8.)

Based on these allegations, Kelley asserts a religious discrimination claim pursuant to Title VII and a retaliation claim. Kelley asserts that she repeatedly reported Hughes's harassment to the Eagle Valley Children's Home Human Resources and asked them to intervene, but Morgan refused to intervene or address the ongoing harassment, giving Hughes "a green light to bully and intimidate [Kelley] which culminated in the pizza incident just prior to [Kelley's] termination." (*Id.* at 9.) Finally, Kelley asserts that she was terminated in retaliation for filing a religious discrimination complaint. (*Id.* at 9-11.) The Court discusses each claim in turn.

### A.    Individual Liability

As an initial matter, the Court finds that the individually named defendants, Donna Clarke, Amie Hughes, and Dawn Morgan, may not be sued for Title VII violations. The Ninth Circuit has held that non-employer individuals cannot be held liable for damages under Title VII, even if that individual is a supervisory employee. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993). As a result, the Court recommends that the individual defendants be dismissed from this action.

### B.    Discrimination under Title VII

Title VII allows an individual to sue an employer for discrimination on the basis of race, color, religion, gender, or national origin. *See* 42 U.S.C. § 2000e-5. Kelley alleges discrimination on the basis of religion. To establish a Title VII discrimination claim, a plaintiff must allege: (1) she is a member of a protected class; (2) she was qualified for her position and performing hers job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside of her protected class were "treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Executive Jet Mgmt.*, Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (citation omitted); *see also* 42 U.S.C. § 2000e-3(e). An adverse employment action is one that materially affects the

1   compensation, terms, conditions, and privileges of employment. *Davis v. Team Elec. Co.*,

2   520 F.3d 1080, 1089 (9th Cir. 2008).

3       At this time, Kelley fails to state a religious discrimination claim.  Kelley does not

4   provide the Court with sufficient factual allegations to show that she experienced <u>an</u>

5   <u>adverse employment action</u> that materially affected the compensation, terms, conditions,

6   and privileges of her employment, <u>based on her religion</u>. Accordingly, the Court

7   recommends dismissal of the Title VII religious discrimination claim, with leave to amend.

8       **C.    Retaliation**

9       When an employee files a complaint regarding an unlawful practice, she has

10  engaged in a protected activity. *See* 42 U.S.C. § 2000e-3(e). Employers may not retaliate

11  against an employee because he has opposed any unlawful act or practice. 42 U.S.C. §

12  12203(a); *see also Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir.

13  2004) ("Pursuing one's rights under the ADA constitutes a protected activity"). To state a

14  retaliation claim under Title VII or the ADA, a plaintiff must allege that: (1) she engaged

15  in a protected act; (2) she suffered some sort of adverse employment action; and (3) there

16  was a causal connection between her protected action and the adverse act. *Davis v.*

17  *Team Elec. Co.*, 520 F.3d 1080, 1093–94 (9th Cir. 2008) (Title VII).

18      Here, Kelley alleges she was terminated from her employment at Eagle Valley

19  Children's Home after reporting harassment to human resources. The Court finds these

20  allegations sufficient to state a retaliation claim against Defendant Eagle Valley Children's

21  Home and recommends that it proceed accordingly.

22      **D.    Leave to Amend**

23      The Court recommends that Kelley be granted leave to file an amended complaint

24  to cure the deficiencies of the complaint. If Kelley chooses to file an amended complaint,

25  she is advised that an amended complaint supersedes (replaces) the original complaint

26  and, thus, the amended complaint must be complete in itself. *See Hal Roach Studios,*

27  *Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he

28  fact that a party was named in the original complaint is irrelevant; an amended pleading

supersedes the original"). Any allegations, parties, or requests for relief from prior papers that are not carried forward will no longer be before the court. Kelley should clearly title the amended pleading as "First Amended Complaint." For each Defendant and each claim, she must allege true facts sufficient to show that the Defendant violated her civil rights. Kelley may not amend the complaint to add unrelated claims against other defendants.

The Court notes that, if Kelley chooses to file an amended complaint curing the deficiencies, as outlined in this order, Kelley should file the amended complaint within 30 days from the date of entry of the District Court's order addressing this report and recommendation. If Kelley chooses not to file an amended complaint curing the stated deficiencies, the Court recommends that Kelley proceed on her retaliation claim against Defendant Eagle Valley Children's Home, only.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that Kelley's application to proceed *in forma pauperis*, (ECF No. 1), be granted, and certain claims in her complaint, (ECF No. 1-2), be allowed to proceed or be dismissed with leave to amend as outlined above.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

## V.    RECOMMENDATION

**IT IS RECOMMENDED** that Kelley's *in forma pauperis* application, (ECF No. 1), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **FILE** the complaint, (ECF No. 1-2), but **NOT** issue summons at this time.

**IT IS FURTHER RECOMMENDED** that the retaliation claim proceed against Defendant Eagle Valley Children's Home.

**IT IS FURTHER RECOMMENDED** that the Title VII religious discrimination claim be dismissed, without prejudice, and with leave to amend.

**IT IS FURTHER RECOMMENDED** that Defendants Donna Clarke, Amie Hughes, and Dawn Morgan be dismissed from this action.

**IT IS FURTHER RECOMMENDED** that if Kelley chooses to file an amended complaint curing the deficiencies of her complaint, as outlined in this order, Kelley shall file the amended complaint within 30 days from the date of entry of the District Court's order addressing this report and recommendation.

**IT IS FURTHER RECOMMENDED** that if Kelley chooses not to file an amended complaint curing the stated deficiencies of the complaint, the Court will instruct the Clerk to issue summons for Defendant Eagle Valley Children's Home and direct Kelley to serve the complaint as to her retaliation claim.

**DATED**: _August 29, 2023_____.

_____
**UNITED STATES MAGISTRATE JUDGE**

8